IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**ANGEL MITCHELL NIEVES PEREZ,**

Plaintiff,

v.                                              Civil No. 09-2212 (GAG)

**DOCTORS' CENTER BAYAMON,**

Defendant.

**OPINION AND ORDER**

Plaintiff Angel Mitchell Nieves Perez ("Plaintiff") brings this action against defendant Doctors' Center Bayamon ("DCB" or "Defendant") alleging retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. Plaintiff also invokes the supplemental jurisdiction of this court to bring claims alleging violations of Puerto Rico Law 80 of May 30, 1976, P.R. Laws. Ann. tit. 29, § 185(a) ("Law 80"); Puerto Rico Law 100 of June 30, 1959 ("Law 100"), P.R. Laws Ann. tit. 29, §§ 146 *et seq.*; Puerto Rico Law 115 of December 20, 1991 ("Law 115"), P.R. Laws Ann. tit. 29, § 194a; and Article 1802 and 1803 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, §§ 5141-42.

Presently before the court are Defendant's motion for summary judgment (Docket No. 29) and Plaintiff's motion to strike (Docket No. 46). The court has been thoroughly briefed on each of these motions (Docket Nos. 25, 43, 44, 66, 65, 67). After reviewing the parties submissions and pertinent law, the court **DENIES**[1] Plaintiff's motion to strike (Docket No. 46) and **GRANTS in part and DENIES in part** Defendant's motion for summary judgment (Docket No. 29).

**I.    Legal Standard**

---

[1] For purposes of this opinion, the court has not addressed Plaintiff's motion to strike (Docket No. 46), given that Plaintiff's claims have survived summary judgment, notwithstanding as dismissed herein.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted). The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. "The movant must aver an absence of evidence to support the nonmoving party's case. The burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both genuine and material." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Factual and Procedural Background**

Plaintiff began working as a security guard with Bayamon Family Hospital[2] in 1999. He was born on February 1st, 1956 and was fifty-two (52) years old at the time his employment was

---

[2] Bayamon Family Hospital was a predecessor of DCB.

terminated by Defendant on May 30, 2008. During his employment with DCB, Plaintiff performed a number of jobs including: security guard, cook, chauffeur, and parking attendant. As an employee assigned to the parking lot, Plaintiff was responsible for the vehicles entering and exiting the parking lot as well as the proper use of the parking lot by the hospital's visitors. He was also in charge of collecting parking fees, and tallying the fees with the tickets at the end of his work shift. Throughout his employment, Plaintiff received a commendable evaluation, receiving an overall score of 3.39 on a 3.99 scale. His personnel record contains no disciplinary actions taken against him during his tenure with DCB.

While working for DCB, Plaintiff alleges that he was subjected to multiple discriminatory remarks related to his age. Plaintiff specifically remembers remarks such as "we don't want an old person here," as well as jokes regarding his retirement pension. On May 15, 2008, as a result of these alleged remarks, Plaintiff filed claims with the Equal Employment Opportunity Commission ("EEOC") and the Local Anti-discrimination Unit ("ADU") alleging that he had been subjected to age discrimination in his employment. The allegations specifically named Plaintiff's coworker, Jean Padilla ("Padilla"), as the declarant of the aforementioned statements. He informed his supervisor Belgui Nieves[3] ("Nieves") that he had filed said claims. Subsequent to the filing of these claims Plaintiff's employment was terminated.[4] Accordingly, he amended his original claims to include an allegation of retaliation against Defendant for having terminated his employment for submitting a charge of discrimination. The EEOC determined that the evidence presented by Plaintiff established a violation under the ADEA, specifically finding that Plaintiff's termination constituted a retaliatory act of discrimination under the ADEA.

Defendant contends that the decision to terminate Plaintiff's employment was part of an overall restructuring plan in which the parking lot operations were "outsourced" to a private

---

[3] Nieves' official title was Manager of the Occupational Safety Department.

[4] Defendant adamantly contends that Plaintiff was informed of the decision to terminate his employment on May 14, 2008, prior to the filing of his complaints with the EEOC and the ADU.

company named M.T.I.[5] There was no written contract documenting the outsourcing of these services. According to Defendant, M.T.I. then contracted another entity, Alberca Inc.,[6] to be in charge of the recruiting and hiring of new personnel for the parking operator positions. Two individuals were hired to handle the duties that had been done by Plaintiff and Ramon Ramos ("Ramos")– the two parking lot operators that had been terminated when the services were allegedly outsourced to M.T.I. The new operators were named Eduardo Rivas ("Rivas") and Jorge Ortiz ("Ortiz"), ages thirty-five (35) and thirty-three (33), respectively, at the time they were hired. Neither Plaintiff nor Ramos were offered the opportunity to interview for these positions with M.T.I. Nieves remained in a supervisory role over the new parking lot employees.[7] Following M.T.I's retention of the parking lot services, M.T.I. continued to utilize the same parking tickets (containing the name of the hospital). Defendant's reception clerks also began collecting the parking fees.[8] Following the outsourcing of these services, Defendant continued to hire security guards, however none of these new employees were hired specifically as parking attendants.[9]

---

[5] Defendant provides arguments and evidence supporting its reasons for the outsourcing of the parking lot services to M.T.I. Defendant cites economic hardship as well as an overall ineffectiveness of the parking lot services as grounds for its decision to contract them out. Dr. Carlos Blanco-Ramos ("Dr. Blanco"), the majority shareholder of corporate shares at DCB, is also the President and sole shareholder of M.T.I. M.T.I. bills Defendant the payroll costs of the parking operation, however receives no economic benefit from taking over the parking services at DCB.

[6] Dr. Blanco is also the President of Alberca, Inc.

[7] There is conflicting evidence submitted by both parties as to Nieves involvement in recruiting, interviewing, hiring, and supervising Rivas and Ortiz.

[8] Defendant avers that these fees were collected by receptionists inside the hospital and not by the parking attendants because of safety concerns regarding the escalating crime rate in the area.

[9] Defendant contends that although the security personnel were also overseen by Nieves, their duties were very different from those assigned to Plaintiff or Ramos during their tenures. The security guards were responsible for walking and watching the entire premises, facilities and areas

**Civil No. 09-2212 (GAG)**                     5

### III.   Discussion

#### A.   Plaintiff's ADEA Claim

The ADEA makes it unlawful for an employer to "fail or refuse to hire or discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C § 623(a)(1). "In addition to prohibiting age discrimination, the ADEA also protects individuals who invoke the statute's protections." Ramirez-Rodriguez v. Boehringer Ingelheim Pharmaceuticals, Inc., 425 F.3d 67, 84 (1st Cir. 2005) (citing 29 U.S.C. § 623(d)). Even if a plaintiff's age discrimination claim fails, he may still assert a retaliation claim under the ADEA. Sanchez-Medina v. Unicco Service Co., 2010 WL 3955780 at *9 (D.P.R. Sept. 30, 2010) (citations omitted).

"To make out a prima facie case of retaliation under the familiar burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03 (1973), the plaintiff must prove that (1) he or she engaged in protected activity under the ADEA, (2) he or she suffered an adverse employment action, and (3) the adverse employment action was causally connected to the protected activity." Collazo v. Bristol-Myers Squibb Mfg., Inc.,617 F.3d 39, 46 (1st Cir. 2010) (citing Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009)). Once this *prima facie* case of retaliation is shown, a presumption of discrimination arises and the burden of production then shifts to the employer to show a "legitimate, non-discriminatory reason" for the adverse employment action. Collazo, 617 F.3d at 46 (1st Cir. 2010). If the defendant meets this burden of production, the burden then shifts back to the plaintiff to show that the proffered reason is actually pretextual, and the employment decision was the result of defendant's retaliatory animus. Roman v. Potter, 604 F.3d 34, 39 (1st Cir. 2010).

With regard to the elements of the *prima facie* case, an individual engages in protected conduct when he or she "has opposed any practice made unlawful by [ADEA], or . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation

---

of the hospital, both indoors and outdoors, including the parking lot. The security guards also covered the half hour lunch breaks taken by the parking attendants. Also, when a parking attendant would use vacation or sick leave, the security guards would cover their absences.

**Civil No. 09-2212 (GAG)**                                6

under [ADEA]." 29 U.S.C.A. § 623(d). As to the second prong, plaintiffs must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Delanoy v. Aerotek, Inc., 614 F. Supp. 2d 200, 210 (D.P.R. 2009) (citations omitted) (internal quotation marks omitted). "The alleged retaliatory action must be material, producing a significant, not trivial, harm." Id. (quoting Carmona-Rivera v. Commonwealth of Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006)). The First Circuit has considered demotions, disadvantageous transfers or assignments, refusals to promote and unwarranted negative job evaluations as adverse employment actions. Id. (quoting Marrero v. Goya of Puerto Rico, Inc., 304 F.3d 7, 23 (1st cir. 2002)). Finally, in analyzing the third prong, the First Circuit has found that "temporal proximity alone can suffice to 'meet the relatively light burden of establishing a *prima facie* case of retaliation.'" DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (quoting Mariani-Colon v. Dep't of Homeland Sec., 511 F.3d 216, 224 (1st Cir. 2007)). Close temporal proximity between the adverse employment action and a plaintiff's protected activity, without further evidence, may give rise to a causal connection. Delanoy, 614 F. Supp. 2d at 210 (citing Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 25-26 (1st Cir. 2004)).

The court finds that Plaintiff has clearly presented evidence to demonstrate a *prima facie* case of retaliation. Plaintiff engaged in protected conduct by filing an administrative complaint before the EEOC and ADU on May 15, 2008. (See Docket No. 38-17 at 1-2.) On May 30, 2008, Plaintiff's employment with DCB was terminated. (See Docket No. 38-19 at 1.) Plaintiff's termination was implemented two weeks after he had informed Nieves, his immediate supervisor, of the filing of his administrative complaint. (See Docket Nos. 38-19 at 1; 60-2 at 23, L. 13-25.) Plaintiff's termination, coupled with its temporal proximity to his administrative charge, satisfies his minimal burden under the law. See Calero-Cerezo, 355 F.3d 6 at 25 (finding one month interval between protected conduct and adverse employment action sufficient to demonstrate causal connection.)

Defendant attacks Plaintiff's *prima facie* case, contending that Plaintiff cannot demonstrate a retaliation claim, as he was informed of the decision to terminate his position at a meeting on May 14, 2008, two weeks prior to the filing of his administrative charge. (See Docket Nos. 38-11; 38-7

**Civil No. 09-2212 (GAG)**                              7

at ¶¶ 9, 10, 11; 38-10 at ¶¶ 6, 7.)  In response, Plaintiff proffers his and Ramon's deposition testimony, in which both parties deny that they were informed of this decision or that the meeting on May 14th ever took place. (See Docket Nos. 60-2 at 24-26; 60-4 at 18-19.)  The contradictions between these accounts establish a clear factual issue of credibility that must be submitted to a jury. See Correia v. Feeney, 620 F.3d 9, 12 (1st Cir. 2010) ("absent exceptional circumstances, issues of witness credibility are to be decided by the jury.").  Thus, the court cannot rule on this issue as a matter of law.

To rebut Plaintiff's *prima facie* case Defendant has presented a non-discriminatory explanation for Plaintiff's termination.  Defendant postulates that Plaintiff's termination was the direct consequence of DCB's fiscally-motivated reorganization. (See Docket No. 29 at 15.)  The First Circuit has adapted the burden-shifting framework for a claimant whose employment was allegedly terminated in implementing a reduction in force.  The variation relates to the fourth element of the *prima facie* case, which requires a showing that the impermissible criterion was not treated neutrally in implementing the reduction in force. Pages-Cahue v. Iberia Linesas Areas de Espana, 82 F.3d 533 (1st Cir. 1996).  Therefore, the plaintiff can demonstrate pretext even if the decision to reduce the workforce was legitimate.  To do so, the plaintiff must demonstrate that the employer singled out the plaintiff for discharge under the reduction plan for an impermissible reason (in this case, retaliation). Smith v. F.W. Morse & Co., Inc., 76 F.3d 413, 422 (1st Cir. 1996) (citations omitted).

Defendant contends that, in response to financial difficulties, it outsourced the operation of its parking facilities to a private company, And, as a result, Plaintiff's position was eliminated.  To support its contention, Defendant presents documentary evidence (Docket Nos. 25-2, 25-7, 25-8, 38-2, 38-3, 38-4, 38-5), and sworn affidavits (Docket Nos. 38-1, 38-6) detailing DCB's financial difficulties during the years 2006-2008 and the efforts taken to alleviate them.  While Defendant's proffer constitutes a non-discriminatory motivation for its action, Plaintiff has presented admissible evidence, which, when considered in the light most favorable to Plaintiff, raises material issues of

**Civil No. 09-2212 (GAG)**                                                                 8

fact regarding the sincerity of Defendant's reasoning for terminating Plaintiff.[10]

Plaintiff argues that pretext can be inferred from the fact that his job functions were assigned to younger employees following his termination. In response, Defendant adamantly opposes such an argument, citing that it was no longer in charge of the operation of the parking services, and therefore, the decision to hire the two younger parking operators cannot be attributed to it. (See Docket No. 29 at 10-11.) However, Plaintiff contends that the "outsourcing" of the parking operations was merely a pretext used to obscure Defendant's retaliatory intent. (See Docket No. 43 at 11.) Plaintiff alleges that M.T.I was actually an alter ego of DCB, and therefore, cannot shield Defendant from liability for its alleged discriminatory actions.

When analyzing whether two corporations constitute a single entity for purposes of the ADEA, the court looks to whether the defendant possesses a sufficient indicia of control over its alleged alter ego. See Odriozola v. Superior Cosmetic Distributors, Inc., 531 F. Supp. 1070 (D.P.R. 1982). This question is essentially a factual issue. Holyoke Visiting Nurses Association v.NLRB, 11 F.3d 302, 306 (1st Cir. 1993) (citing W.W. Grainger, Inc. v. NLRB, 860 F.2d 244, 247 (7th Cir. 1988) ("joint employment can be found from 'such factors as the supervision of the employees' day-to-day activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions' and the right to refuse a referred employee.")). The court has also considered similarities in management and ownership between the old and new companies in determining alter ego status. NLRB v. Hospital San Rafael,

---

[10] Plaintiff asserts that Defendant's efforts to highlight his faults as an employee demonstrates that its outsourcing defense is pretextual. In Dominguez-Cruz, v. Suttle Caribe, Inc., the First Circuit recognized that changes in an employer's nondiscriminatory explanation can indicate pretext. 202 F.3d 424, 432 (1st Cir. 2000) (citing Thurman v. Yellow Freight Sys., Inc., 90 F.3d 1160, 1167 (6th Cir. 1996)). In its motion, Defendant submits testimony about Plaintiff's alleged failures to comply with company policies regarding the stamping of parking tickets. (See Docket Nos. 36-1; 38-7; 38-10.) However, regardless of whether Defendant initially premised Plaintiff's termination on these grounds, in its reply brief Defendant states that "Plaintiff's dismissal was a direct consequence of the reorganizational change and outsource of the administration of the parking lot facilities." (See Docket No. 64 at 13.) Therefore evidence as to Plaintiff's alleged misfeasance played no part in the court's consideration of this motion.

**Civil No. 09-2212 (GAG)**  9

Inc., 42 F.3d 45, 50 (1st Cir. 1994).

Plaintiff presents ample evidence contradicting DCB's alleged disassociation with the operation of the parking facilities: (1) There is no written contract between M.T.I. and DCB. (See Docket No. 60-3 at 29, L. 13-15.) (2) Dr. Blanco is an executive director of DCB and president of M.T.I. as well as a major shareholder[11] of both companies. (See id. at 28, L. 5-18.) (3) Dr. Blanco is also President of Alberca, Inc., the entity that allegedly recruited the new personnel. (See id. at 36, L. 17-19.) (4) The parking operations are provided without any pay and M.T.I. receives no economic benefit from its relationship with DCB. (See id. at 38-39, L. 18-25, L. 1-3.) (5) Alberca Inc. receives no economic benefit for the personnel that it provides to M.T.I. (See id. at 37, L. 1-3.) (6) The new parking operators continued to be supervised by Nieves[12] – who also oversaw the requests for overtime and vacation leave. (See id. at 19-23; 60-4 at 32-41.) (7) Personnel within the hospital continued to collect parking fees and substitute the parking personnel during lunch hours, vacations and absences. (See Docket Nos. 60-3 at 5, L. 11-16; 11, L. 2-10.) The court finds the accumulation of this evidence is sufficient to persuade a reasonable jury that Defendant did not relinquish its control over the parking operations at DCB. Accordingly, the court cannot grant summary judgment as to the issue of Defendant's role in hiring younger parking attendants to replace Plaintiff.

Plaintiff also attempts to demonstrate pretext through deposition testimony recounting discriminatory remarks made to Plaintiff about his age and his decision to file the administrative charge. "Statements by supervisors carrying the inference that the supervisor harbored animus against protected classes of people or conduct are clearly probative of pretext." Hodgens v. General

---

[11] Dr. Blanco is the sole shareholder of M.T.I.

[12] Plaintiff further contends that Nieves was responsible for recruiting and interviewing and ultimately hiring the two new parking lot attendants. However, the evidence submitted by Plaintiff does not support his contention. (See Docket No. 60-3 at 4, L. 7-14; 17-18.) Both Rivas and Ortiz testified that they were interviewed and hired in Manati by Alberca, Inc. (See Docket Nos. 69-2 at 1-2; 69-3 at 1-3.) Therefore, the court did not consider these submitted facts when analyzing the motion before it.

**Civil No. 09-2212 (GAG)**               10

Dynamics Corp., 144 F.3d 151, 171 (1st Cir. 1998) (citations omitted). Plaintiff alleges that, after he informed Nieves that he had filed an administrative complaint against DCB, and prior to his termination, Nieves suggested that he withdraw his complaint. (See Docket No. 60-2 at 23.) Plaintiff also submits the deposition testimony of Orvin Rosa ("Rosa"), Leader of Security at DCB.[13] In his deposition, Rosa testifies that he was present when age-based comments were directed at Plaintiff. (See Docket No. 60-4 at 7.) While not determinative of the issue, a jury could find that such evidence demonstrates harbored age-based animus on behalf of individuals in supervisory positions at DCB. When coupled with the short period of time between Plaintiff's administrative charge and his dismissal, it would not be unreasonable for a jury to conclude that these sentiments may have played a part in the decision-maker's ultimate decision to dismiss Plaintiff in retaliation for his complaint.

Plaintiff also submits an EEOC determination regarding his retaliation claim under the ADEA. With regard to this claim, the EEOC found that "the evidence obtained does establish a violation under the ADEA. Specifically, that [Plaintiff] was retaliated against after filing an of age discrimination complaint." (See Docket No. 45-5 at 18-19.) The court has great discretion when determining the admissibility and probative value given to such a determination. See Smith v. Massachusetts Institute of Technology, 877 F.2d 1106, 1113 (1st Cir. 1989) (quoting Hilton v. Wyman-Gordon, Co., 624 F.2d 379, 383 (1st Cir. 1980)). While the EEOC determination is not binding upon this court, the First Circuit has held that it is entitled to great deference. See id. (quoting Blizard v. Fielding, 572 F.2d 13, 16 (1st Cir. 1978). Therefore, when ruling on Defendant's motion for summary judgment, the court, in its discretion, decided to take the EEOC determination into consideration.

The court finds that the inferences raised by Plaintiff's submissions, when considered in conjunction with the EEOC determination, are sufficient to persuade a reasonable jury that

---

[13] In its reply brief (Docket No. 64) Defendant points out inconsistencies in Rosa's deposition regarding his supervisory duties. (See Docket No. 64 at 9-10.) The court finds that these inconsistencies speak to the weight, not the admissibility of his testimony and can be explored during cross-examination.

Defendant's proffered reason was pretextual and Plaintiff was dismissed in retaliation for his protected conduct. Accordingly, the court **DENIES** Defendant's motion for summary judgment on Plaintiff's ADEA retaliation claim.

### B.  State Law Claims

#### 1.  Law 100 & Law 115

The First Circuit has held that "on the merits, age discrimination claims asserted under the ADEA and under Law 100 are coterminous." Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 18 (1st Cir. 2007). "As applied to age discrimination, it differs from the ADEA only with respect to how the burden-shifting framework operates." Id. As discussed under the above ADEA analysis, Plaintiff has presented sufficient evidence to establish genuine issues of material fact with regard to each of the elements of his claim. Therefore the court **DENIES** Defendant's motion for summary judgment as to his Law 100 claim.

Law 115 forbids employers from discriminating against employees for offering written or verbal testimony before legislative, judicial or administrative forums. P.R. Laws Ann. tit. 29, § 194a. "This court has previously held that ADEA and Law 115 retaliation claims are similar and have parallel evidentiary mechanisms." Baerga-Castro v. Wyeth Pharmaceuticals, 2009 WL 2871148, at *13 (D.P.R. Sept. 3, 2009) (citing Sanchez Borgos v. Venegas Const. Corp., 2009 WL 928717, at *6-7 (D.P.R. Mar. 31, 2009). Accordingly, the court incorporates its analysis of Plaintiff's ADEA retaliation claim and **DENIES** summary judgment as to Plaintiff's Law 115 claim.

#### 2.  Law 80

Plaintiffs also brings forth a Law 80 claim, alleging that she was discharged without just cause. "An employee's initial burden under Law 80 is to allege unjustified dismissal and prove actual dismissal. If the employee meets this burden, the employer must establish by a preponderance of the evidence that the discharge was made for good cause." Hoyos v. Telecorp Communications, Inc., 405 F. Supp. 2d 199, 205-6 (D.P.R. 2005) (internal quotation marks omitted). Pursuant to the prior analysis, the court holds that Defendant has provided just cause, under the statute, for Franco's dismissal. However, Plaintiff has provided sufficiently probative evidence, demonstrating genuine

**Civil No. 09-2212 (GAG)**                              12

issues of material fact with regard to Defendant's proffered reason for his dismissal. Accordingly, the court **DENIES** Defendant's motion for summary judgment as to his Law 80 claim.

### 3. Article 1802 & 1803

Plaintiff also brings claims under Article 1802 and 1803 of the Puerto Rico Civil Code. With respect to these claims, this court has held that:

> [T]o the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, [s]he is barred from using that same conduct to also bring a claim under Article 1802. An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked.

Rosario v. McConnell Valdes, 2008 WL 509204, at *2 (D.P.R. Feb 21, 2008); see also Suarez v. Venator Group, Inc., 2009 WL 4015655, at *3-4 (D.P.R. Nov. 17, 2009); Peña Alcantara v. Correctional Health Services, Corp., 2009 WL 890467, at *5-6 (D.P.R. Mar. 24, 2009). Plaintiff bases his claims under Article 1802 and 1803 on the same conduct that supports his age discrimination claim under laws 100 and 115. As Plaintiff has not stated independent grounds on which to bring his tort claims, the court **DISMISSES** Plaintiff's claims under Article 1802 and 1803 with prejudice.

## IV. Conclusion

For the reasons set forth above, the court **GRANTS in part and DENIES in part** Defendant's motion for summary judgment (Docket No. 29).

**SO ORDERED**.

In San Juan, Puerto Rico this 16th day of May, 2011.

*S/Gustavo A. Gelpí*
GUSTAVO A. GELPÍ
United States District Judge